OPINION
{¶ 1} Defendant-appellant, Gerardo Ramirez, appeals his conviction for aggravated burglary in the Clermont County Court of Common Pleas. We affirm.
 {¶ 2} Appellant was indicted for aggravated burglary in violation of R.C. 2911.11, and on May 19-20, 2004, his case was tried before a jury. The evidence presented at trial reveals the following facts relevant to this appeal.
 {¶ 3} On September 24, 2003, Gary Shumway, the victim in this case, was outside his first-floor apartment at 511 Piccadilly Square. While outside and in the apartment complex, he encountered appellant. After a brief conversation, a fight ensued. After several minutes, the fight broke up, and Shumway returned to his apartment. From his apartment, he then observed two Hispanic males approach his house and begin hitting the window on his porch in an attempt to get inside. One of the two Shumway recognized as the person he had just been fighting.
 {¶ 4} As he heard glass breaking, Shumway exited his apartment through the front door. He went immediately to his neighbor's apartment upstairs and called 9-1-1. He described the two men he observed breaking into his apartment to the 9-1-1 operator, and police units were dispatched to the scene. While awaiting the arrival of the police, Shumway again observed one of the two men outside the apartment complex wielding what appeared to be a knife.
 {¶ 5} In addition to Shumway's call to 9-1-1, another resident of the Piccadilly complex called 9-1-1 to report events connected to those reported by Shumway. The caller reported observing a man fitting the description of the men described by Shumway walking around the area of the apartment complex wielding a knife in a "crazy" manner.
 {¶ 6} Police Officer Jeremy Grooms responded to the scene, and testified at trial. According to Officer Grooms, when he arrived at the apartment complex he encountered two men who fit the description of the suspects. He approached, and both men ran in different directions. He began to pursue, then apprehended, appellant. A few minutes later, when the other suspect was also taken into custody, Officer Groom searched the waistband of appellant's pants and discovered a knife.
 {¶ 7} When the suspects were in custody, Shumway was brought out to one of the police cruisers and there he identified appellant as one of the two he observed attempting to break into his apartment. When Shumway returned to his apartment, approximately one-half hour after leaving to the sound of breaking glass, he observed that the glass in his bedroom window and the glass in the sliding door to his patio were shattered. He and Officer Grooms also observed significant damage in various parts of the apartment that appeared to be caused by a person, or persons, wielding a knife.
 {¶ 8} The jury found appellant guilty of complicity to aggravated burglary; he was sentenced to three years in prison; and this appeal followed, in which appellant raises three assignments of error.
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "The verdict finding the appellant guilty of aggravated burglary is against the weight of the evidence."
 {¶ 11} In his first assignment of error, appellant contends that his conviction was against the weight of evidence.
 {¶ 12} We begin by noting that a conviction will not generally be reversed as against the weight of the evidence if it is supported by some "competent, credible evidence on each essential element" of the crime charged. State v. Hill (Feb. 15, 1985), Portage App. No. 1467. When reviewing the weight of the evidence, an appellate court will reverse "only if the evidence weighs heavily against conviction." State v. Allen (1990), 69 Ohio App.3d 366, 374.
 {¶ 13} Appellant was convicted of violating R.C. 2911.11(A)-(2), which provides: "No person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense if * * * [t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
 {¶ 14} In arguing that his conviction was against the weight of evidence, appellant's specific contention is that the state failed to produce any evidence that he, or an accomplice, trespassed in an occupied structure while another person was present. According to appellant, Shumway's flight from the apartment prior to the time the perpetrator, or perpetrators, completed their entry eliminated the possibility of establishing the element of R.C. 2911.11(A) that the trespass into an occupied structure take place while another person is present.
 {¶ 15} Appellant's contention is, essentially, one of statutory construction. He contends that the legislature's usage of the word "while" in R.C. 2911.11(A) required the state to establish that Shumway and the perpetrator were present in the apartment simultaneously. In other words, appellant contends, the state failed to show Shumway was inside the apartment at exactly the same moment in time that the trespass took place.
 {¶ 16} The state, on the other hand, relying on the established construction of the word "while" in R.C. 2903.01(B), Ohio's felony murder statute, contends that "while" should not be construed as "simultaneously with," but only as "associated with in time," or as "part of one continuous occurrence."
 {¶ 17} "It is well-settled that a court's duty in construing an act of the legislature is to determine legislative intent * * *." Roderer v. Board of Trustees of Miami Twp. (1983), 14 Ohio App.3d 155, 157. In carrying out this duty, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42. In addition, when the act is a penal statute or ordinance, it "must be construed in the light of the mischief [it is] designed to combat." City of Mentor v. Giordano (1967), 9 Ohio St.2d 140, 144.
 {¶ 18} When a court finds that a provision is capable of multiple constructions, as in the instant case, it may also consider other matters, among which are those set forth in R.C. 1.49:
 {¶ 19} "(A) The object sought to be attained;
 {¶ 20} "(B) The circumstances under which the statute was enacted;
 {¶ 21} "(C) The legislative history;
 {¶ 22} "(D) The common law or former statutory provisions, including laws upon the same or similar subjects;
 {¶ 23} "(E) The consequences of a particular construction;
 {¶ 24} "(F) The administrative construction of the statute."
 {¶ 25} In reviewing the Committee Comments to R.C. 2911.11, and the related Committee Comments in R.C. 2911.12, it is clear that one objective in enacting R.C. 2911.11 was the reduction or elimination of the high risk of harm to persons that exists when one forcibly enters an occupied structure. It is also clear that appellant's proposed construction would be detrimental, and contrary to, this objective. For instance, under appellant's proposed interpretation, one could brandish a weapon and begin forcibly entering the dwelling of another while the other person was inside. The perpetrator of these actions would escape some of the more serious consequences designed to deter this type of behavior, however, if he merely succeeded in causing the occupant to flee from the structure before his entry was complete.
 {¶ 26} Thus, we hold that where one begins to enter an occupied structure by force, with the purpose to commit a criminal offense inside, he cannot escape liability under R.C. 2911.11 if the occupant or occupants, who in all likelihood will be experiencing the apprehension of immanent physical harm, choose to flee the structure before the actor completes his entry. The element: "while another person is present" in R.C. 2911.11(A) is sufficiently established if the state demonstrates the presence of the person inside the structure is associated in time with the entry, or the entry and the presence of the person inside are part of one continuous occurrence.
 {¶ 27} Applying the foregoing holding to the facts of this case, we find that the state presented competent, credible evidence that appellant's role in the entry into Shumway's apartment was sufficiently associated in time with Shumway's actual presence there.
 {¶ 28} The record on appeal reveals competent, credible evidence was presented on the other essential elements of complicity to aggravated burglary as well. Consequently, appellant's contention that his conviction is against the weight of evidence is without merit, and the first assignment of error is overruled.
 {¶ 29} Assignment of Error No. 2:
 {¶ 30} "Appellant was denied the effective assistance of counsel when trial counsel failed to object or remove jurors who had personally, or whose family, had been victims of burglary or theft related crimes and when trial counsel failed to call witnesses to testify at trial."
 {¶ 31} In his second assignment of error, appellant contends that he was denied his Sixth Amendment right to the effective assistance of counsel.
 {¶ 32} In order to prevail on a claim of ineffective assistance of counsel, an appellant must satisfy two conditions. First, there must be a showing of a substantial violation of one of the duties of a defense counsel. To demonstrate this, a convicted defendant "must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington (1984), 466 U.S. 668, 688,104 S.Ct. 2052, 2064.
 {¶ 33} This objective standard allows for many and various ways that counsel can provide effective assistance. Thus, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Id. at 689, 2065. Many choices are strategic or tactical, and we presume a licensed attorney has reasons for pursuing or not pursuing a seemingly proper course of action. State v. Steele, Butler App. No. CA2003-11-276, 2005-Ohio-943, at ¶ 87.
 {¶ 34} Second, an appellant must show prejudice. In other words, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691, 104 S.Ct. at 2066. To show prejudice, there must be a reasonable probability that, but for counsel's errors, the result of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, 143.
 {¶ 35} Appellant first contends that trial counsel was ineffective for not challenging or objecting to prospective jurors who admitted to being victims, or related to victims, of theftrelated offenses.
 {¶ 36} The decision not to exercise challenges to prospective jurors falls within the realm of reasonable trial strategy. See State v. Buchanan (Feb. 14, 1992), Union App. No. 14-91-14. Trial counsel can see and hear a prospective juror's response, and is in the best position to determine whether a juror should be challenged. Bradley,42 Ohio St.3d at 143.
 {¶ 37} In the instant case, appellant has failed to demonstrate how or where the jurors in question failed to be fair and impartial. In the absence of evidence in the record demonstrating actual juror impartiality, we presume counsel's decision not to challenge prospective jurors was reasonable trial strategy.
 {¶ 38} Appellant next contends that counsel was ineffective for failing to call potential witnesses. According to appellant, trial counsel submitted a list of potential witnesses, issued subpoenas to compel their attendance at trial, but deficiently chose not to call them.
 {¶ 39} As appellant notes, it is well-established that the choice to call or not call witnesses is a trial tactic. State v. Jones, Butler App. No. CA2001-03-056, 2002-Ohio-5505, at ¶ 22. Thus, the decision not to call a witness is afforded a presumption of reasonableness. To overcome that presumption, and to establish prejudice, appellant "must establish that the testimony of [a] witness would have significantly assisted the defense[,] and that the testimony would have affected the outcome of the case." Id.
 {¶ 40} In the instant case, appellant claims defense counsel failed to call several witnesses who potentially could have testified concerning his whereabouts while the events giving rise to this case were unfolding. In particular, appellant points to defense counsel's failure to call appellant's wife, Ms. Martinez, as a witness. At appellant's sentencing hearing, Martinez testified that appellant was with her, at home, when the acts giving rise to this case transpired.
 {¶ 41} We first note the record indicates that counsel was aware of the potential witnesses; thus, the decision not to have them testify does not appear to have been one of uninformed judgment. Second, even assuming that defense counsel lacked a sufficient reason for not calling the potential alibi witnesses, we are not convinced their testimony would have significantly assisted the defense. The jury heard testimony from Shumway and Officer Grooms, and the tape of an anonymous call to 9-1-1, that appellant, or someone fitting his description, was present outside the apartment complex at the time in question. Moreover, the jury was presented with evidence that appellant was apprehended in the complex at the time in question, and a knife was found on his person.
 {¶ 42} Given the extent of the evidence placing appellant at the scene during the time in question, and given counsel's apparent informed decision, we cannot say there is a reasonable probability the suggested testimony would have affected the outcome of appellant's trial. Thus, the contention that trial counsel was ineffective for failing to call witnesses is also not well-taken.
 {¶ 43} Consequently, as both of appellant's challenges to the performance of his trial counsel fail, the second assignment of error is overruled.
 {¶ 44} Assignment of Error No. 3:
 {¶ 45} "Appellant's conviction for aggravated burglary should not stand because the indictment is defective and does not properly charge an offense."
 {¶ 46} In his third assignment of error, appellant contends the indictment charging him with a violation of R.C. 2911.11-(A)(2) was defective because it failed to properly identify the factual basis upon which the grand jury found probable cause.
 {¶ 47} To be valid, indictments must contain words "sufficient to give the defendant notice of all the elements of the offense with which [he] is charged." Crim.R. 7. See, also, R.C. 2941.05. Giving an accused notice of all the elements of the offense with which he is charged in an indictment serves two purposes. State v. Sellards (1985),17 Ohio St.3d 169, 170. First, when offenses are clearly identified and defined, the accused is protected from future prosecutions for the same offense; second, giving notice in an indictment compels the government to aver all material facts constituting the essential elements of the offense. Id. When this is done, the accused has an appropriate and fair opportunity to defend against the charges. Id.
 {¶ 48} The indictment against appellant states, in relevant part, that "on or about the 24th day of September, 2003, * * *, by force, stealth, or deception, [appellant] trespassed in an occupied structure * * * when another person other than an accomplice * * * was present, with purpose to commit in the structure * * * any criminal offense, and [appellant] had a deadly weapon or dangerous ordnance on or about [his] person * * *."
 {¶ 49} Appellant argues the failure of the indictment to identify the crime he intended to commit when he entered Shumway's apartment was fatal, rendering his conviction void. See State v. Cimpritz (1953),158 Ohio St. 490, at paragraph six of the syllabus (holding convictions based upon indictments which do not charge an offense are void).
 {¶ 50} Appellant's argument fails for two reasons. First, appellant's indictment tracks the language of the statute with which he was charged, and indictments which track the language of a criminal statute are generally valid. See State v. Skatzes, 104 Ohio St.3d 195, 199,2004-Ohio-6391, at ¶ 26.
 {¶ 51} Second, appellant received a bill of particulars providing him with much of the information he claims was lacking in the indictment. The bill of particulars states that while in Shumway's residence, appellant wielded a knife and threatened to kill him. See id. (finding indictment and bill of particulars together provided adequate notice and an opportunity to defend).
 {¶ 52} Consequently, we find appellant's indictment was valid; he received adequate notice of the crime with which he was charged, and he was given a fair opportunity to defend that charge.
 {¶ 53} Appellant's third and final assignment of error is overruled.
 {¶ 54} Judgment affirmed.
Walsh, P.J., and Bressler, J., concur.