[Cite as *State v. Davis*, 2020-Ohio-3199.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-67 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-542 |
| | : | |
| BRANDON DAVIS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of June, 2020.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

MARSHALL G. LACHMAN, Atty. Reg. No. 0076791, 75 North Pioneer Boulevard, Springboro, Ohio 45066
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Brandon Davis, appeals from his conviction in the Clark County Court of Common Pleas after a jury found him guilty of one count of aggravated burglary with a firearm specification and one count of burglary with a firearm specification. In support of his appeal, Davis contends that the jury's verdict on those counts and specifications was not supported by sufficient evidence and was against the manifest weight of the evidence. Davis also contends that the trial court erred in overruling his pretrial motion to dismiss the aggravated burglary charge on grounds that the indictment contained incorrect statutory language for that charge.

{¶ 2} As discussed more fully below, Davis's conviction for aggravated burglary and the attendant firearm specification was not supported by sufficient evidence and was against the manifest weight of the evidence. There was, however, sufficient evidence for the jury to find Davis guilty of burglary with an attendant firearm specification, and that verdict was also not against the manifest weight of the evidence. Because there was insufficient evidence to support Davis's conviction for aggravated burglary, the issue regarding incorrect statutory language in the indictment for aggravated burglary is moot. In light of these findings, the judgment of the trial court will be vacated as to Davis's conviction for aggravated burglary and the attendant firearm specification. The matter will be remanded so that the trial court can impose a conviction and sentence for burglary with the attendant firearm specification.

**Facts and Course of Proceedings**

{¶ 3} On September 11, 2017, a Clark County grand jury indicted Davis on one count of aggravated burglary in violation of R.C. 2911.11(A)(2), a first-degree felony; one

count of burglary in violation of R.C. 2911.12(A)(2), a second-degree felony; and one count of receiving stolen property in violation of R.C. 2913.51(A), a fifth-degree felony. The counts for aggravated burglary and burglary each included a one-year firearm specification under R.C. 2941.141(A). The aggravated burglary and burglary charges arose from the September 4, 2017 burglary of Kimberly and Rill Thompson's residence in Springfield, Ohio. The receiving stolen property charge arose from a separate burglary of another Clark County residence that occurred on August 29, 2017.

{¶ 4} Pursuant to a written plea agreement, Davis pled guilty to the burglary and receiving stolen property charges. In exchange for Davis's guilty plea, the State agreed to dismiss the aggravated burglary charge and both firearm specifications. After accepting Davis's guilty plea, the trial court sentenced Davis to one year in prison for receiving stolen property, eight years in prison for burglary, and one year in prison for violating post-release control in another case. The trial court ordered these sentences to be served consecutively for a total prison term of ten years. Davis then appealed from his conviction.

{¶ 5} On appeal, this court affirmed Davis's conviction for receiving stolen property, but reversed Davis's burglary conviction on grounds that his guilty plea to that charge was not knowingly, intelligently, and voluntarily entered. *See State v. Davis*, 2d Dist. Clark No. 2018-CA-49, 2019-Ohio-1904. After the matter was remanded to the trial court, Davis was re-indicted for aggravated burglary, burglary, and the two attendant firearm specifications. Despite being offered a plea agreement, Davis chose to proceed with a jury trial on those charges and specifications.

{¶ 6} Prior to trial, Davis moved the trial court to dismiss the aggravated burglary

charge on grounds that the indictment did not correctly track the language of the aggravated burglary statute, R.C. 2911.11(A)(2). Specifically, Davis argued that the indictment incorrectly charged him with trespassing in an occupied structure when another person, other than his accomplice, was "present or likely to be present." The State conceded that the "or likely to be present" language used in the indictment was incorrect given that R.C. 2911.11(A)(2) simply requires another person other than the offender's accomplice to be "present" during the trespass of an occupied structure. Nevertheless, the State argued that the incorrect language in the indictment did not invalidate the aggravated burglary charge. The trial court agreed with the State and overruled Davis's motion to dismiss.

{¶ 7} At trial, the State presented testimony from Kimberly and Rill Thompson, the homeowners of the Springfield residence that was burglarized on September 4, 2017. Kimberly Thompson testified that on the evening in question, she and her husband Rill left their residence on Springfield Jamestown Road in order to return their grandchildren to their mother's home in Fairborn. Kimberly testified that when they returned home and pulled into their driveway, Kimberly observed a man and a woman, later identified as Davis and his girlfriend, Winter Ann Eggers, standing in the driveway with items of property set around them. Kimberly testified that she recognized one of the items as a light blue pillowcase from her grandson's bed. Upon seeing this, Kimberly knew that Davis and Eggers had been inside their home.

{¶ 8} Kimberly testified that Davis and Eggers ran away and left the items of property halfway between the house and Springfield Jamestown Road. Kimberly testified that, upon seeing this, she and Rill backed out of their driveway and followed

Davis and Eggers down the road. Kimberly testified that they pulled their vehicle alongside Davis and asked him what he had been doing in their house. Kimberly claimed that Davis, who was on his phone, kept running and would not answer them. Kimberly called 911 as Davis and Eggers were getting into a silver getaway vehicle. Kimberly testified that she gave the 911 dispatcher the getaway vehicle's license plate number. The 911 call was played for the jury and admitted into evidence as State Exhibit No. 1.

{¶ 9} Rill Thompson similarly testified that as he and his wife Kimberly were pulling into their driveway, he observed Davis and Eggers standing in some bushes on the left-hand side of the driveway near Springfield Jamestown Road. Rill confirmed that Davis and Eggers were both on his property when he and Kimberly first saw them. Rill testified that his home was approximately 150 to 160 feet from Springfield Jamestown Road and that Davis and Eggers were located less than 30 feet from the road. Like Kimberly, Rill also testified that he saw items of property on the ground at Davis's and Eggers's feet. Rill specifically testified to observing a pillowcase, trash can, and some other unidentified item.

{¶ 10} Rill testified that as he and Kimberly were following Davis and Eggers down Springfield Jamestown Road, he observed a silver Chevy HHR coming toward them in the opposite direction. Rill testified that Eggers unsuccessfully tried to stop the silver HHR, and then ran and hid in a neighbor's garden with Davis. Rill testified that Davis and Eggers then once again took off running south down Springfield Jamestown Road. Rill testified that he continued to follow Davis and Eggers, who eventually got into the silver HHR. Rill testified that after Kimberly called 911, he and Kimberly stopped and

made contact with a sheriff on the road and advised the sheriff that Davis and Eggers were in the silver HHR.   After the HHR was stopped by law enforcement, Rill and Kimberly went home.

{¶ 11} Rill testified that when he and Kimberly returned home, he noticed a chair from their deck had been moved below their kitchen window.   Rill testified that the screen had been knocked out of the kitchen window and that their back door had been unlocked by the perpetrators.   Rill testified that when he went inside his home, he observed that his gun cabinet was open and that all the firearms and ammunition he kept in the cabinet were missing.   Rill also testified that all of his wife's jewelry was missing from their bedroom dresser.   Rill further testified that their television had been removed from its cabinet and was sitting on the living room floor as though it was ready to be transported.

{¶ 12} Continuing, Rill testified that all the missing items of property were discovered outside on the ground.   Kimberly's jewelry was located inside the light blue pillowcase that she had observed next to Davis and Eggers.   Rill's firearms were in a pack n' play bag,[1] and the missing ammunition was located at the bottom of the trash can that Rill had observed at Davis's and Eggers's feet.   Rill testified that six of his firearms were in the pack n' play bag and that they were all operable with the ammunition found in the trash can.   Photographs of the stolen property and the Thompsons' home were admitted into evidence as State Exhibit Nos. 2 through 14.

{¶ 13} Both Kimberly and Rill testified that they did not know Davis or Eggers and that neither Davis nor Eggers had permission to enter their home.   Rill further testified

---

[1] A pack n' play bag is a bag used to transport a certain type of play pen for young children.

that no one was home during the break-in and that he and Kimberly were only gone for about an hour to an hour and a half when the break-in occurred.

{¶ 14} For its last witness, the State called Detective Brian Melchi of the Clark County Sheriff's Office. Melchi testified that on the evening in question, he was called to the Thompsons' residence in reference to a burglary. Melchi testified that when he arrived at the residence, the Thompsons advised him that they saw Davis and Eggers standing between their house and the roadway as they were pulling into their driveway. Melchi also testified that no one was inside the Thompsons' residence at the time of the break-in.

{¶ 15} In addition, Melchi testified that uniformed patrol deputies stopped the silver HHR containing Davis and Eggers and took them and the driver, Stephen Mitchum, into custody. Melchi testified that the silver HHR was then impounded and searched after a search warrant was obtained. According to Melchi, the search of the silver HHR yielded a crowbar, screwdriver, gloves, and a red shirt lying on the front passenger seat. Based on his training and experience, Melchi testified that these items are commonly used in burglaries. Photographs of the silver HHR and the evidence discovered therein were admitted as State Exhibit Nos. 15 and 16.

{¶ 16} Following the admission of the foregoing testimony and evidence, the State rested its case. Davis then moved for an acquittal under Crim.R. 29 on grounds that the State failed to present evidence establishing all elements of the charged offenses and firearm specifications. The trial court disagreed with Davis and overruled his Crim.R. 29 motion. After overruling Davis's motion, the defense also rested its case. The jury then deliberated and found Davis guilty of aggravated burglary, burglary, and both of the

firearm specifications.

{¶ 17} At sentencing, the trial court merged the aggravated burglary and burglary offenses and the two firearm specifications. Following the merger, the State elected to have Davis sentenced for aggravated burglary. The trial court then sentenced Davis to 11 years in prison for aggravated burglary plus one year for the associated firearm specification, thus making Davis's total prison term 12 years. The trial court also ordered the 12-year prison sentence to run consecutively to the two one-year prison terms that Davis had previously received for receiving stolen property and violating his post-release control.

{¶ 18} Davis now appeals from his conviction, raising three assignments of error for review. For purposes of clarity, we will address Davis's assignments of error out of order.

**Second Assignment of Error**

{¶ 19} Under his second assignment of error, Davis contends that his conviction for aggravated burglary with an attendant firearm specification was not supported by sufficient evidence. Davis also contends that there was insufficient evidence for the jury to find him guilty of burglary with an attendant firearm specification.

*Standard of Review*

{¶ 20} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery

No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

*Aggravated Burglary*

{¶ 21} R.C. 2911.11(A)(2) defines the offense of aggravated burglary at issue and provides that:

(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply: * * * (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

{¶ 22} An "occupied structure" includes "any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, * * * [that] * * * [a]t the time * * * is occupied as the permanent or

temporary habitation of any person, whether or not any person is actually present." R.C. 2909.01(C)(2). There is no dispute that the Thompsons' home qualifies as an "occupied structure."

{¶ 23} Davis contends that his conviction for aggravated burglary was not supported by sufficient evidence because the State failed to present any evidence establishing that another person other than his accomplice was present when he trespassed in the Thompsons' home. We agree.

{¶ 24} Pursuant to R.C. 2911.11(A)(2), the State was required to present evidence establishing that someone other than Davis and his accomplice was present at the time Davis trespassed in the Thompsons' home. The Supreme Court of Ohio has held that "[t]he crime of aggravated burglary continues so long as the defendant remains in the structure being burglarized." *State v. Powell*, 59 Ohio St.3d 62, 571 N.E.2d 125 (1991), paragraph one of the syllabus. Relying on *Powell*, this court held that a defendant

completed his crime of burglary when he exited the house. At that time, his trespass in the occupied structure terminated. Although he remained a trespasser on the property, his conduct no longer conformed to the requirements for aggravated burglary.

*State v. Clark*, 107 Ohio App.3d 141, 147, 667 N.E.2d 1262 (2d Dist.1995). Therefore, once the offender leaves the occupied structure, the necessary trespass is no longer taking place and the crime of aggravated burglary has been completed. *Id.*

{¶ 25} Decisions from other appellate courts in Ohio indicate that another person can be deemed present during an offender's trespass of an occupied structure under various circumstances. For example, the Twelfth District Court of Appeals found that

another person was present during the trespass of an occupied structure under circumstances where a resident immediately fled from inside his home after the defendant broke a window to facilitate the trespass therein. *State v. Ramirez*, 12th Dist. Clermont No. CA2004-06-046, 2005-Ohio-2662, ¶ 4, 26-27. In a different case, the Twelfth District Court of Appeals found that another person was present during the trespass of an occupied structure under circumstances where the defendant trespassed inside a home while the homeowners were in their front yard, with one of the homeowners then following the defendant into the home. *State v. K.W.*, 12th Dist. Warren No. CA2016-01-004, 2016-Ohio-7365, ¶ 20-21.

{¶ 26} The Third District Court of Appeals found that another person was present during the trespass of an occupied structure under circumstances where a neighbor, who agreed to take out the trash for a vacationing resident, saw the defendant trespassing inside the resident's home. The defendant was spotted by the neighbor while the neighbor was standing immediately outside the back of the resident's home getting ready to take out the trash. *State Dewitt*, 3d Dist. Allen No. 1-09-25, 2009-Ohio-5903, ¶ 11-13, 16.

{¶ 27} The Eighth District Court of Appeals found that another person was present during the trespass of an occupied structure under circumstances where a resident returned home to find a burglary in progress. The resident approached and entered the home as the defendant contemporaneously fled from inside the home. *State v. Coleman*, 8th Dist. Cuyahoga No. 102966, 2016-Ohio-297.

{¶ 28} With the foregoing case law and statutory language in mind, we find that there was insufficient evidence to convict Davis of aggravated burglary. Unlike the

aforementioned cases, it is clear from the evidence that no other person was inside, immediately outside, or contemporaneously entering the Thompsons' home at the time Davis and Eggers were trespassing therein. The evidence established that when the Thompsons returned home, Davis and his accomplice were already standing outside approximately 120 to130 feet away from the home on or near the Thompsons' driveway. A driveway does not constitute an "occupied structure." *See* R.C. 2909.01; *State v. Bogovich*, 5th Dist. Fairfield No. 97CA78, 1998 WL 751781, *4 (Oct. 22, 1998). Therefore, because Davis and Eggers were no longer trespassing in an occupied structure when the Thompsons returned home, and because no one else was present at the time they were trespassing in the occupied structure, the element of aggravated burglary requiring another person to be present during the trespass of an occupied structure was not satisfied.

{¶ 29} We note that a reasonable fact finder could have concluded from the evidence that Davis and Eggers were not finished burglarizing the home since the Thompsons' television was removed from its cabinet and sitting on the living room floor. However, despite the possible ongoing nature of the burglary, Davis's initial trespass of the home was completed once he and Eggers exited the home. *See Powell*, 59 Ohio St.3d 62, 571 N.E.2d 125; *Clark*, 107 Ohio App.3d 141, 667 N.E.2d 1262. Accordingly, because none of the evidence suggests that either of the Thompsons or any other person was present during that trespass, the State did not satisfy the necessary elements of aggravated burglary under R.C. 2911.11(A)(2).

*Burglary*

{¶ 30} R.C. 2911.12(A)(2) defines the offense of burglary at issue and provides that:

(A) No person, by force, stealth, or deception, shall * * * (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]

{¶ 31} Davis does not provide any specific argument supporting his claim that there was insufficient evidence for the jury to find him guilty of burglary. Although we found insufficient evidence to support Davis's aggravated burglary conviction, the record indicates that there was sufficient evidence to find Davis guilty of burglary under R.C. 2911.12(A)(2).

{¶ 32} Unlike aggravated burglary, the burglary offense at issue requires another person other than the offender's accomplice to be "present or *likely to be present"* during the trespass of an occupied structure. (Emphasis added.) R.C. 2911.12(A)(2). "The [Supreme Court of Ohio] has held that the 'likely to be present' element is satisfied where the structure is a permanent dwelling house which is regularly inhabited, the occupants were in and out of the house on the day in question, and the occupants were temporarily absent when the burglary occurred." *State v. Frock,* 2d Dist. Clark No. 2004 CA 76, 2006-Ohio-1254, ¶ 21, citing *State v. Kilby*, 50 Ohio St.2d 21, 23, 361 N.E.2d 1336 (1977) and *State v. Fowler*, 4 Ohio St.3d 16, 19, 445 N.E.2d 1119 (1983). (Other citation omitted.)

{¶ 33} In this case, the likely-to-be-present element was satisfied because the burglary occurred at the Thompsons' home (a regularly inhabited permanent dwelling house) on a day that the Thompsons were in and out of the house and temporarily absent when the burglary occurred. Specifically, the evidence established that on the day of the burglary, the Thompsons were home for the Labor Day holiday, but had left their residence for about an hour and a half to drop off their grandchildren in Fairborn. Under these circumstances, the Thompsons were likely to be present at the time Davis trespassed in their home.

{¶ 34} All the other elements of burglary were also satisfied. When viewed in a light most favorable to the State, the evidence established that Davis was on the Thompsons' property on the night of the burglary, and he was exerting control over items taken from inside the Thompsons' home, which had been broken into. He immediately fled after being observed by the Thompsons, and he was stopped in a vehicle containing tools that are commonly used for burglaries. These facts would permit a rational fact finder to conclude that Davis trespassed in the Thompsons' home by force with the purpose to commit the crime of theft therein. Therefore, the evidence presented by the State satisfied all elements of burglary under R.C. 2911.12(A)(2).

*Firearm Specifications*

{¶ 35} Although the firearm specification attached to Davis's aggravated burglary offense cannot stand due to there being insufficient evidence to support his conviction for that offense, we still must address the firearm specification attached to Davis's burglary

offense. The one-year firearm specification attached to Davis's burglary offense is governed by R.C. 2941.141(A). According to that statute, the one-year firearm specification applies when "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." R.C. 2941.141(A).

{¶ 36} A "firearm" is "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant" and it "includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1). Thus, in support of a firearm specification, the State " ' "must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense." ' " *State v. Staten*, 10th Dist. Franklin No. 18AP-48, 2018-Ohio-4681, ¶ 11, quoting *State v. Murphy*, 49 Ohio St.3d 206, 208, 551 N.E.2d 932 (1990), quoting *State v. Gaines*, 46 Ohio St.3d 65, 545 N.E.2d 68 (1989), syllabus.

{¶ 37} Davis contends that he should not have been found guilty of the firearm specification at issue because the State failed to present evidence establishing that he was in possession of any firearms at the time he entered the Thompsons' home. Davis claims that the only firearms in his possession were the ones he stole from the Thompsons' home and that those firearms could not be used to find him guilty of the firearm specification. We disagree.

{¶ 38} In *Powell,* 59 Ohio St.3d 62, 571 N.E.2d 125, the Supreme Court of Ohio analyzed whether a defendant convicted of aggravated burglary could also be found guilty of a three-year firearm specification even though the defendant had acquired the firearm by theft during the course of the burglary and did not actively use the firearm in the

commission of the offense. *Id.* at 63. The firearm specification statute at issue in *Powell,* former R.C. 2929.71*,* did "not require that the firearm be used in the commission of the felony, or that the defendant acquire the firearm before beginning the crime; all that [was] necessary [was] that the defendant have the firearm on his person or under his control at some point during the commission of the crime." (Emphasis omitted.) *Id.* In light of the language in R.C. 2929.71, and because "a gun stolen during a burglary can be as dangerous as one which the burglar has at the start of the crime[,]" the Supreme Court held that the three-year firearm specification could be imposed "if the defendant ha[d] a firearm in his or her possession at any time during the commission of a felony, even if * * * the firearm [was] acquired by theft during the course of the felony." *Id.*

{¶ 39} Similar to the statute in *Powell,* R.C. 2941.141(A) provides that a one-year firearm specification can be imposed if the offender "had a firearm on or about the offender's person or under the offender's control while committing the offense." Several appellate courts in Ohio have applied the holding in *Powell* to cases involving firearm specifications imposed under R.C. 2941.141 and, in doing so, found sufficient evidence to find the defendant guilty of the firearm specification. *See e.g., State v. Wilson*, 8th Dist. Cuyahoga No. 97465, 2012-Ohio-3567, ¶ 31-35; *State v. English*, 1st Dist. Hamilton No. C-080872, 2010-Ohio-1759, ¶ 28-29; *State v. Harry*, 12th Dist. Butler No. CA2008-01-0013, 2008-Ohio-6380, ¶ 53-54.

{¶ 40} Based on the foregoing case law and the relevant statutory language, we find that the firearm specification attached to Davis's burglary offense was supported by sufficient evidence. The evidence established that Davis stole six firearms and matching ammunition from the Thompsons' residence while he was burglarizing the home. The

evidence also established that the firearms were operable with the stolen ammunition. Therefore, because Davis had possession over the firearms and ammunition while he was committing the offense of burglary, there was sufficient evidence for the jury to find him guilty of the firearm specification attached to that offense.

{¶ 41} For the foregoing reasons, Davis's second assignment of error is overruled with regard to the jury's verdict finding Davis guilty of burglary with an attendant firearm specification.   However, because there was insufficient evidence to find him guilty of aggravated burglary, Davis's second assignment of error is sustained with regard to his conviction for aggravated burglary and the firearm specification associated with that offense.

**Third Assignment of Error**

{¶ 42} Under his third assignment of error, Davis contends that the jury's verdict finding him guilty of aggravated burglary, burglary, and the two firearm specifications was against the manifest weight of the evidence.   Because we have already determined that there was insufficient evidence to convict Davis of aggravated burglary and the associated firearm specification, it necessarily follows that said conviction was also against the manifest weight of the evidence.   *State v. Short*, 2d Dist. Montgomery No. 27192, 2017-Ohio-7200, ¶ 22 ("[w]here there is insufficient evidence to support a conviction, it will also necessarily be against the manifest weight of the evidence").   We do not, however, find that the jury's verdict finding Davis guilty of burglary with an attendant firearm specification was against the manifest weight of the evidence.

{¶ 43} "[A] weight of the evidence argument challenges the believability of the

evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citations omitted). *State v. Jones*, 2d Dist. Montgomery No. 25724, 2014-Ohio-2309, ¶ 8. When evaluating whether a conviction was against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "A judgment should be reversed as being against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Christon*, 2d Dist. Greene No. 2019-CA-43, 2020-Ohio-1524, ¶17, quoting *Martin* at 175.

**{¶ 44}** After reviewing the record and weighing the evidence and all reasonable inferences, we do not find that the jury clearly lost its way and created a manifest miscarriage of justice when it found Davis guilty of burglary and the associated firearm specification. As previously noted, the evidence established that Davis trespassed by force into the Thompsons' home when the Thompsons were likely to be present with the purpose to commit the crime of theft therein. The evidence also established that Davis took various items of property from the Thompsons' home, including six operable firearms and matching ammunition, which were in Davis's possession during the burglary. Therefore, based on this evidence, we cannot say that the jury's verdict finding Davis guilty of burglary and the one-year firearm specification was against the manifest weight

of the evidence.

{¶ 45} For the foregoing reasons, Davis's third assignment of error is overruled with regard to the jury's verdict finding Davis guilty of burglary with an attendant firearm specification.   However, because his conviction for aggravated burglary was against the manifest weight of the evidence, Davis's third assignment of error is sustained with regard to his conviction for aggravated burglary and the firearm specification associated with that offense.

**First Assignment of Error**

{¶ 46} Under his first assignment of error, Davis contends that the trial court erred in overruling his pretrial motion to dismiss the aggravated burglary charge on grounds that the language in the indictment did not track the language of R.C. 2911.11(A)(2). Specifically, Davis contends that the language in the indictment incorrectly charged him with trespassing in an occupied structure while another person was "present or likely to be present" as opposed to just "present."   While the State concedes that the "likely to be present" language used in the indictment was incorrect, it claims that the error does not invalidate the aggravated burglary charge.   In light of our holding under Davis's second and third assignments of error, we need not address this issue, because regardless of the incorrect language in the indictment, the aggravated burglary conviction will be vacated due to it being supported by insufficient evidence.

{¶ 47} Davis's first assignment of error is overruled as moot.

**Conclusion**

**{¶ 48}** Having sustained in part and overruled in part Davis's second and third assignments of error, and having overruled Davis's first assignment of error as moot, Davis's conviction for aggravated burglary with the attendant firearm specification is vacated. The matter shall be remanded to the trial court for it to impose a conviction and sentence for burglary with an attendant firearm specification.

. . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

John M. Lintz
Marshall G. Lachman
Hon. Douglas M. Rastatter